[File No. 6143.]

J. J. LEIF, Petitioner, v. W. S. GRAHAM, Respondent.

(247 N. W. 612.)

Opinion filed March 21, 1933.

*A. J. Gronna,* Attorney General and *Harold D. Shaft,* Assistant Attorney General, for appellant.

258

*O'Hare, Cox & Cox,* for petitioner.

BURR, J. Petitioner is a bulk station agent of the Standard Oil Company of Indiana. His written contract requires him to "operate the Company's bulk station at Wilton, N. D. and in connection therewith to sell its petroleum products . . . in the following described territory; Wilton, N. D., Still, N. D., Baldwin, N. D., and such other territory as may from time to time be assigned to him . . . ;" devote his entire time to the employment; comply with all instructions of the Company; "call upon and solicit purchases for Company's products among new and former customers of Company . . . develop new customers . . . make deliveries and solicit sales of Company's products more or less constantly along certain routes and within certain well defined territories;" sell the Company products exclusively, and not "either directly or indirectly sell or solicit orders for the sale of Gasoline, Kerosene, Motor Fuels, Oils or Greases furnished by other than said Company within the territory in which he sold such products while in the employ of the Company . . . ;" provide and maintain at his own expense, whatever truck chassis may be necessary to make proper sale and delivery of the Company products (the Company to furnish tank, bucket box and buckets) ; pay all taxes, license fees, and taxes imposed upon his truck, operate the truck himself or by approved drivers, sell products only for cash or under restricted

credit restrictions, be responsible for the sales made to "any unauthorized customers," answer to the Company and be responsible for the acts of his drivers and for their sales the same as if he had made the sales and deliveries personally; and will not sell or pledge the goods of the company for his own personal account.

As compensation petitioner receives the "salary of $60.00 per month and in addition thereto, commissions on all pay gallons above 5,000." This commission varies in accordance with the products sold, the person to whom sold, and the distance from the station to the place of delivery.

The respondent, the motor vehicle registrar, had issued a truck license to the defendant for the operation of his truck for private purposes only. On June 15, 1932, he issued an order directed to the petitioner requiring him to show cause why such license should not be cancelled, on the ground that the petitioner was using the truck "in the business of commercial freighting as defined by the Motor Vehicle Registration Law and such use, without a commercial freighting license, being in violation of law."

A hearing was had before the registrar and thereafter the license was cancelled.

The petitioner applied to the district court for a writ of certiorari to review the action of the registrar. The case is before us on appeal by the latter from the order of the district court setting aside the order of cancellation, and requires merely an interpretation of the law.

It is the contention of the registrar that the facts stated show the truck used by the petitioner is used for "commercial freighting" without the payment of the statutory fee "for motor trucks used for commercial freighting."

Section 25, subdiv. (c) of chapter 179 of the Session Laws of 1927, as amended by chapter 186 of the Session Laws of 1931, specifies the fee required "for motor trucks used for commercial freighting." Subdivision (e) of this amended section says: "Commercial freighting shall mean the carriage of things other than passengers, for hire, except within the limits of the same city, village or town. . . ." The registrar says the facts stated show the petitioner was engaged in commercial freighting.

The registrar says that though the petitioner be an employee of the

Standard Oil Company with compensation fixed at salary and commission; it is clear the truck is being used for "a carriage of things other than passengers, for hire," because the commission is increased in proportion to the distance required for transportation in delivery, and the truck is used in making these deliveries.

It is true, as appellant states, that the law involved is concerned with the truck used on the road rather than with the owner of the truck. When a truck is used for the carriage of things for hire it is engaged in commercial freighting and must pay the higher license fee; but to be placed in this class the goods carried must be carried for *hire;* that is, directly or indirectly the owner of the truck must be paid for the act of *transporting* the goods.

The ownership is not so material. The truck is classified by the type of work for which it is used and the business relations existing between the owner and his employer. Nevertheless there is an analogy between a truck used in commercial freighting, as defined by our statute, and the truck belonging to a carrier for hire, and consequently between the owners. The South Dakota court had occasion to pass upon the expression "carrier for hire" in connection with the license fees to be paid for the use of the road, and it was held, in Griffin v. Murphy, 51 S. D. 50, 211 N. W. 804, that one, employed by the same company under conditions identical with the case at bar, is not a "carrier for hire." The term "hire" was one of the important words construed. See also Murphy v. Standard Oil Co. 49 S. D. 197, 207 N. W. 92.

The compensation paid must be for the *transportation* of the article and not for the extra time used.

There is little analogy between this case and the case of a commercial freighter. Here the person receiving the goods pays no extra charge for the service of delivery. Neither the contract with the company nor the transactions with customers in any way discuss or consider paying for the service delivery. It is time the petitioner received extra compensation when he makes such deliveries—that is he gets a larger commission—but it is clear this is paid him by his employer because of the extra time and trouble. The increase is based on the amount of the gallons delivered and other factors. There is no additional cost to the purchaser because of this—the increase being deducted from the amount required to be remitted to the company.

In commercial freighting one holds himself out to the public, or a portion of it, and generally or specially, as ready to transport goods for a charge based upon the weight, size, or character of the goods transported and the distance delivered. Here it can not be said the petitioner is other than an employee of the company, engaged solely in the company's business—not one freighting for hire, but one who sustains the relation of servant to a master and who is paid by the master for the services rendered. Because he leaves the usual routes, works up additional business for the company, and find customers in country districts he gets an extra commission for this work. If he does not get this class of business he does not get the additional commission, no matter what distance he travels. He is paid because of the success of his efforts, and the basis of calculation is the amount of this business done. His vocation is not that of a "freighter" and as he uses his truck to carry on his vocation only the truck is not used in "commercial freighting."

The judgment of the lower court is affirmed.

NUESSLE, Ch. J., and BIRDZELL and BURKE, JJ., and HOLT, Dist. J., concur.

CHRISTIANSON, J., did not participate; Hon. DANIEL B. HOLT, Judge of the First Judicial District, sitting in his stead.